## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **SIMON GUOBADIA**<br>     **Plaintiff,**<br><br><br><br><br><br>**v.**<br><br><br>**PORSHA WILLIAMS,**<br><br>     **Defendant.** | **CIVIL ACTION FILE NO.**<br>**1:24-CV-05346-MHC**<br><br>**PLAINTIFF'S FIRST AMENDED**<br>**COMPLAINT FOR DEFAMATION,**<br>**INTENTIONAL INFLICTION OF**<br>**EMOTIONAL DISTRESS &**<br>**INVASION OF PRIVACY** |

Plaintiff Simon Guobadia ('Plaintiff'), by and through his undersigned counsel, files this Complaint against Defendant Porsha Williams ('Defendant') and alleges as follows:

### INTRODUCTION

1.     This action arises from Defendant's intentional and malicious dissemination of false and defamatory statements about Plaintiff on social media platforms, specifically implying that Plaintiff suffers from erectile dysfunction ('ED').

1

2.      Defendant's statements were widely understood to refer to Plaintiff, given the timing of the posts and their immediate connection to Plaintiff's ongoing public divorce proceedings.

3.      Defendant's statements, presented as factual, have caused significant harm to Plaintiff's personal and professional reputation, subjected him to public ridicule, and inflicted severe emotional distress.

4.      Defendant's large following and status as a public figure ensured that these false statements would be widely disseminated and have a lasting impact on Plaintiff's reputation.

## PARTIES

5.      Plaintiff Simon Guobadia is an individual currently residing in Dubai, UAE. Plaintiff is a successful businessman, entrepreneur, and philanthropist with a respected reputation in the energy and hospitality sectors.

6.      Plaintiff is the founder and CEO of SIMCOL Group, a well-known investment company with holdings in various industries, including energy and hospitality.

7.      Defendant Porsha Williams is an individual residing in Fulton County located in Atlanta, Georgia. Defendant is a public figure and reality television personality, known worldwide for her role on The Real

Housewives of Atlanta, amongst other widely distributed television programs and for her significant social media presence.

8.     Defendant has cultivated a large social media following, with over 7.7 million followers on Instagram alone, which enables her to widely disseminate her statements to a vast audience.[1]



## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and a substantial portion of the events giving rise to the claims occurred in the Northern District of Georgia.

## FACTUAL BACKGROUND

---

[1] The image is a screenshot of the Defendant's Instagram profile, captured on November 16, 2024, at the following url: https://www.instagram.com/porsha4real/.

11.    Plaintiff and Defendant were married on November 26, 2022, in a ceremony that was widely publicized due to Defendant's prominence in entertainment media.

12.    Shortly thereafter, "[i]n February of 2024, news broke that Porsha Williams and her husband Simon Guobadia were splitting after 15 months of marriage — an announcement that came shortly after news that she would return to The Real Housewives of Atlanta" according to bravotv.com.[2] Real Housewives of Atlanta is the most popular program of the Real Housewives franchise that airs on Bravo, a cable television network owned by Comcast's NBCUniversal Media Group division. As of November 2023, Bravo is available to approximately 70,000,000 households.[3]

13.    Mr. Guobadia's relationship with the Defendant became contentious when the Defendant suddenly started making negative, false and

---

[2] Vilensky, Sophie,"Portia Williams' Divorce from Simon Guobadia: Everything We Know & Where They Stand, bravotv.com." https://www.bravotv.com/the-daily-dish/porsha-williams-simon-guobadia-divorcestatusupdate#:~:text=In%20February%202024%2C%20news%20broke,of%20Atlanta%20for%20Season%2016.

[3] https://en.wikipedia.org/wiki/Bravo_(American_TV_network)#:~:text=As%20of%20November%202023%2C%20Bravo,2013%20peak%20of%2095%2C000%2C000%20households.

misleading statements about him on social media, using her outsized

platform to negatively influence public perception of him.

14.    On or about July 9, 2024, Defendant published a series of

statements on her Instagram account concerning erectile dysfunction ("ED").

These posts were intentionally crafted to imply that Plaintiff suffers from

this condition, casting him in a negative and humiliating light. The series

began with a striking post featuring a stark black background, prominently

displaying the bold, white block letters "ED.":



15.    Defendant's posts continued to include definitions of ED, along with details about its symptoms, emotional impacts, and potential treatments.



16.    Defendant's statements included comments such as, 'Erectile dysfunction (ED) is the inability to get or keep an erection firm enough to have sexual intercourse,' and 'ED can cause stress, affect self-confidence, and contribute to relationship problems.'



How does a man feel when he has ED?

It is common for men with ED to feel **anger, frustration, sadness, or lack confidence**. However, the condition can be treated.  Mar 14, 2024

https://www.webmd.com › erectile-...

Coping with Erectile Dysfunction - WebMD

… anxiety and stress are common emotional responses, but one qualitative study found that actually the most common initial reaction was **a sense of emasculation**  Nov 24, 2021

#menshealthawareness

17.     Defendant also posted recommendations for dealing with ED, including advice on weight loss, quitting smoking, eating a healthy diet, and reducing stress.



18.     These statements were accompanied by the hashtag #MensHealthAwareness, which appeared to give the posts a tone of health awareness, though the timing and context made it clear they were directed at Plaintiff.

8

19.    The nature, timing, and context of these posts, amidst the couple's public separation, led reasonable viewers to infer that Defendant's statements were referring to Plaintiff – because they were.

20.    Importantly, Defendant's statements were not made as expressions of opinion but instead presented as factual assertions regarding Plaintiff's health, stating or strongly implying that Plaintiff suffers from ED.

21.    Defendant's Instagram account has a significant following, with over 7.7 million followers, thereby ensuring that her statements were widely disseminated to a large audience.

22.    Defendant's statements regarding ED were further amplified by multiple media outlets, which published articles and posts reinforcing Defendant's implications regarding Plaintiff's alleged ED.

23.    "All About the Tea", a celebrity gossip website, reported on Defendant's statements on July 10, 2024, in an article titled: "Porsha Williams Claims Simon Guobadia Suffers from Erectile Dysfunction."[4]

---

[4] https://allaboutthetea.com/2024/07/10/porsha-williams-claims-simon-guobadia-suffers-from-erectile-dysfunction/. Screenshot taken 11/20/2024.



24.    The "All About the Tea" article specifically referenced Defendant's Instagram posts, mentioned above, and highlighted that members of the public clearly recognized the Defendant's comments as referring to the Plaintiff. The publication also cited numerous and widespread social media posts reflecting this false interpretation.[5]

25.    Another online source entitled, "RHO Café", published a story titled, "RHOA's Porsha Williams Throws Shade at Ex Simon Guobadia With 'ED' Posts…"[6] The "RHO Café" article highlighted that Defendant's posts were interpreted as an insinuation that Plaintiff suffers from ED, compounding the false and defamatory perception that Plaintiff suffers from a specific medical condition.

26.    The RHO Café includes screenshots of the above referenced posts as presented on the Instagram page of "the neighborhood talk" at its

---

[5] Id.
[6] rho.cafex.biz/blog/rhoas-porsha-williams-throws-shade-at-ex-simon-guobadia-with-ed-posts-after-he-disses-her-as-a-witch-and-seemingly-threatens-legal-battle-over-defamatory-statements

Instagram handle @theneighborhood talk.



27. The Neighborhood Talk is a leading instagram page that reports on celberity news and gossip. It boasts over 1.9 Million




followers on instagram, and its posts leave no doubt that the public at large considerd the Defendants' comments about ED to be specifically referening Mr. Guobadia.

28. In fact, postings on The Neighborhood Talk page included images of Mr. Guobadia and the Defendant superimposed over the Defendant's text messages:[7]

29.    "The Jasmine Brand", a widely-read entertainment website and social media platform, also covered Defendant's statements in a July 10, 2024, article titled, "Porsha Williams' Estranged Husband Simon Guobadia Threatens Legal Action After Reality Star Seemingly Claims He Has Erectile Dysfunction."[8]

30.    With its eight hundred and thirty-one thousand followers, Jasmine Brand ranks as yet another social media platform with a huge reach that has connected the Defendant's false statements with Mr. Guobadia.



---

[7] https://www.instagram.com/p/C9OCNliP-ht/?utm_source=ig_embed&ig_rid=adcc351f-9779-4a19-8f8b-5db9dd7c642b

[8] https://thejasminebrand.com/2024/07/10/porsha-williams-estranged-husband-simon-guobadia-threatens-legal-action-after-reality-star-seemingly-claims-he-has-erectile-dysfunction/

31.     Defendant's postings were presented in a factual manner, implying a specific medical diagnosis of ED regarding Plaintiff, and were clearly intended to cast Plaintiff in a negative and humiliating light.

32.     As a former spouse, Defendant's statements were perceived by the public as having legitimacy and insider knowledge regarding Plaintiff's health, enhancing the likelihood that the public would believe these statements were true.

33.     Defendant's statements were false; Plaintiff does not have ED and has never suffered from or been diagnosed with this condition.

34.     Defendant made these false statements knowingly or with reckless disregard for their truth, demonstrating actual malice.

35.     Defendant's posts and the media's resulting coverage were calculated to damage Plaintiff's personal and professional reputation, causing him humiliation and distress.

36.     Defendant's actions were extreme, outrageous, and intended to provoke and inflict emotional distress upon Plaintiff.

37.     Plaintiff has experienced substantial reputational harm as a result of Defendant's posts, affecting his credibility and image within his community and professional networks.

38.    Plaintiff has also endured significant emotional distress and personal anguish due to the false and defamatory portrayal created by Defendant's statements.

## CAUSE OF ACTION FOR DEFAMATION

39.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

40.    Under Georgia law, a cause of action for defamation requires: (a) a false and defamatory statement concerning the plaintiff; (b) an unprivileged communication to a third party; (c) fault by the defendant amounting at least to negligence; and (d) special harm or actionability of the statement irrespective of special harm.

41.    Defendant made false and defamatory statements about Plaintiff by asserting, or insinuating, that he suffers from ED through a series of Instagram postings that implied that Plaintiff suffers from erectile disfunction.

42.    Defendant's statements were not expressions of opinion but were presented as fact, specifically discussing ED symptoms and remedies in a factual manner.

43.    Based on the intimate nature of a marital relationship, the false statements about Plaintiff suffering from ED took on a heightened level of credibility and authenticity in the eyes of the public. This perception

stemmed from the parties' prior close and intimate marital relationship, which is often viewed as the most personal and revealing connection between two individuals. The public was inclined to believe the false statements not only because of their sensational nature but also because they were made by someone presumed to have firsthand knowledge. As a result, the impact of these falsehoods was particularly devastating to Plaintiff, as their perceived truth was bolstered by the Defendant's position as his former spouse.

44.     These false and defamatory statements were widely disseminated to millions of third parties through Defendant's widely followed social media platforms. The content of these posts was unmistakably provocative and sensational, ensuring rapid circulation and public discussion.

45.     Moreover, these statements were amplified to millions more by numerous media outlets, including but not limited to *All About the Tea*, *RHO Cafe*, *The Jasmine Brand*, and *The Bravo Shade Room*. These outlets further disseminated the false and defamatory implications of Plaintiff's alleged ED, leaving no doubt that Defendant's posts referred directly to Plaintiff. The extensive media coverage ensured that the defamatory statements reached an even broader audience, compounding the harm to Plaintiff's reputation.

46.     Defendant acted with actual malice, knowingly making false statements with the intent to harm Plaintiff's reputation. Her actions were deliberate, calculated, and executed with reckless disregard for the truth. By targeting Plaintiff's standing as a positive, confident, and successful entrepreneur and philanthropist, Defendant sought to inflict reputational harm that extended beyond personal embarrassment. Her falsehoods jeopardized Plaintiff's credibility in professional and philanthropic circles, undermining the public trust and esteem that Plaintiff had cultivated through years of hard work and dedication.

47.     Defendant intended the defamatory statements to expose Plaintiff to public ridicule by insinuating that he suffers from erectile dysfunction (ED) and attributing to him the symptoms commonly associated with the condition. In one of Defendant's defamatory series of ED social media postings, she specifically referenced a publication that described feeling "angry, frustrated, sad, and lacking confidence" as symptoms of ED. By quoting this language, Defendant intentionally crafted a narrative designed to humiliate Plaintiff by implying that these traits applied to him. Her false and malicious statements were calculated not only to harm Plaintiff's reputation but also to injure his prospects for future relationships and cast doubt on his well-established public persona and sterling reputation as a confident and successful individual.

48.    The Defendant knew that her false and defamatory statements would expose the Plaintiff to widespread and merciless ridicule at the hands of her legion of social media followers. This ridicule continues to this day, searing itself into the consciousness of millions who now associate Plaintiff's name with ED because of Defendant's falsehoods.

49.    To make matters worse, these false statements are indelibly etched into the fabric of the internet, where they will remain accessible indefinitely. This has made it nearly impossible for Plaintiff—or any of his businesses—to maintain a positive online presence, as references to Defendant's defamatory statements now dominate search results. The pervasive nature of the internet ensures that these falsehoods will continue to harm Plaintiff's personal and professional reputation well into the future.

50.    Defamation per se arises when false statements are made that, on their face, harm an individual's reputation or expose them to public scorn without the need for additional explanation or context. Defendant's statements satisfy this standard by falsely asserting that Plaintiff suffers from erectile dysfunction and associating him with negative characteristics, such as being "angry, frustrated, sad, and lacking confidence." These false claims inherently demean Plaintiff's personal and professional identity, portraying him in a way that would naturally provoke public ridicule and diminish his standing in the community.

51.    Defendant's allegations not only targeted Plaintiff's physical and emotional integrity but also struck at the core of his reputation as a capable and respected entrepreneur and philanthropist. By making these claims in a public forum, Defendant ensured their immediate and widespread dissemination, amplifying the harm to Plaintiff's credibility and social esteem. The direct and disparaging nature of these statements leaves no doubt that they constitute defamation per se, as their content is inherently damaging and injurious to Plaintiff's personal and professional reputation.

52.    Personal and professional contacts have sought to distance themselves from Plaintiff since Defendant made these false and defamatory remarks—a result Defendant intended. Plaintiff's life has been irrevocably altered by the widespread publication of these falsehoods. The damage extends into his personal relationships, where he is met with skepticism and pity, and into his professional engagements, where the shadow of these false allegations looms large. These defamatory statements have created a persistent stigma that undermines Plaintiff's ability to move forward both personally and professionally.

53.    As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered significant damages, including but not limited to reputational harm, emotional distress, and economic losses. These damages include the loss of professional opportunities, diminished trust and

credibility within his community, and severe emotional suffering caused by the humiliation and ridicule he has endured. The widespread and enduring nature of the falsehoods ensures that Plaintiff's damages will continue to accrue over time.

## **CAUSE OF ACTION FOR DEFAMATION PER SE**

54.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

55.    Under Georgia law, a statement is defamatory per se when it: (a) Charges an individual with having a disease that would tend to exclude them from society; (b) Accuses an individual of criminal activity; (c) Impugns an individual's trade or profession; or (d) Subjects the individual to public hatred, contempt, or ridicule

56.    Defendant's statements falsely attributed a medical condition (ED) to Plaintiff, which exposed him to public scorn and ridicule.

57.    Defendant's statements, being made by an individual with firsthand knowledge of Plaintiff's health, were perceived as credible, increasing the likelihood of reputational harm.

58.    Because Defendant's statements inherently defamed Plaintiff without the need for extrinsic proof, they constitute defamation per se.

59.    Plaintiff is entitled to presumed damages as a result of Defendant's defamatory per se statements.

## CAUSE OF ACTION FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61.    Under Georgia law, a claim for intentional infliction of emotional distress requires: (a) intentional or reckless conduct; (b) that is extreme and outrageous; (c) a causal connection between the wrongful conduct and the emotional distress; and (d) severe emotional distress.

62.    Defendant's conduct was extreme and outrageous, designed to humiliate Plaintiff and subject him to public scorn.

63.    Defendant's deliberate and malicious actions meet each of these elements, as her false and defamatory statements were made with the intent to humiliate and provoke Plaintiff, causing him significant and ongoing emotional harm.

64.    Defendant's conduct in publishing false statements about Plaintiff was both intentional and reckless. She knew, or should have known, that making baseless claims about Plaintiff's private life and physical health on a global platform would cause him significant emotional harm. By choosing to publicly share these falsehoods, Defendant acted with clear disregard for the consequences of her actions, demonstrating a deliberate intent to harm.

65.     Defendant's actions were intentionally designed to provoke Plaintiff and inflict significant distress. The public nature of her social media posts, combined with her substantial following, ensured that her defamatory statements would reach millions of people. Defendant, being intimately familiar with Plaintiff's reputation as a respected entrepreneur and philanthropist, knew that these statements would tarnish his image and cause immense emotional anguish.

66.     Defendant's conduct was extreme and outrageous, far exceeding the bounds of decency in a civilized society. Publicly accusing Plaintiff of erectile dysfunction and attributing to him negative traits such as anger, sadness, and a lack of confidence was not only baseless but deeply personal. These statements were made with malicious intent and without regard for the devastating impact they would have on Plaintiff's personal and professional life.

67.     Defendant's statements have exposed Plaintiff to relentless and ongoing ridicule, causing him significant anxiety and emotional distress—an outcome that Defendant clearly intended. Even when Plaintiff makes mundane posts on his own social media or is referenced in unrelated publications, commenters frequently reference Defendant's defamatory statements. These constant reminders are a heavy burden for anyone to bear, serving as a persistent source of stress and humiliation. Furthermore, the

21

permanence of the internet ensures that these falsehoods will remain accessible, perpetuating the harm and making it nearly impossible for Plaintiff to escape their shadow.

68.    There is a direct causal connection between Defendant's conduct and Plaintiff's emotional distress. Defendant's false and defamatory statements triggered widespread public ridicule and professional skepticism, creating an environment in which Plaintiff feels humiliated and isolated. The targeted nature of Defendant's actions ensures that Plaintiff's emotional pain stems directly from her malicious conduct.

69.    Plaintiff has suffered severe emotional distress as a direct result of Defendant's actions. This distress includes enduring public humiliation, professional skepticism, and personal anguish. Plaintiff struggles with anxiety and a loss of self-confidence, knowing that his reputation has been tarnished in the eyes of colleagues, friends, and the public. The emotional pain is compounded by the pervasive and ongoing nature of the harm, as the defamatory statements continue to circulate widely, ensuring that Plaintiff's distress is both profound and enduring.

70.    Defendant's conduct was not a mere expression of opinion but a targeted attack aimed at causing Plaintiff embarrassment and distress.

71.    Plaintiff has suffered ongoing psychological and reputational harm, including business relationships being severed due to the public scandal.

## CAUSE OF ACTION FOR
## INVATION OF PRIVACY – FASLSE LIGHT

72.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

73.    A false light claim Under Georgia law requires: (a) publicity that places the plaintiff in a false light; (b) the false light must be highly offensive to a reasonable; (c) the defendant acted with knowledge or reckless disregard of the falsity.

74.    The Defendant's statements created a false impression that Plaintiff suffers from erectile disfunction (ED).

75.    By leveraging her significant social media platform, Defendant ensured that these falsehoods reached millions of viewers, leading the public to draw humiliating and disparaging conclusions about Plaintiff's physical and emotional competence. This intentional misrepresentation of Plaintiff's character and personal health was not only false but deeply damaging to his reputation.

76.    The false light in which Plaintiff was placed would be highly offensive to a reasonable person due to the sensitive and deeply personal

nature of the allegations. Erectile dysfunction is often associated with

feelings of inadequacy, diminished self-esteem, and public stigma, making

Defendant's insinuations particularly egregious. By falsely attributing these

traits to Plaintiff, Defendant subjected him to ridicule and public scorn,

creating an offensive and humiliating perception of his personal and

professional identity.

77.     The Plaintiff was indeed highly offended and humiliated by the

Defendant's statements.

78.     Defendant acted with knowledge of the falsity of her statements

or, at a minimum, with reckless disregard for their truth. As Plaintiff's

former spouse, Defendant was uniquely aware of the falsity of her claims

and the damaging implications they would have. Despite this knowledge,

Defendant chose to publicize these falsehoods, demonstrating a clear intent

to harm Plaintiff by placing him in a false and offensive light before the

public.

79.     As a result of Defendant's actions, Plaintiff has suffered

significant damages, including emotional distress, irreparable harm to his

personal and professional reputation, and the loss of valuable business and

professional opportunities. Plaintiff's standing as a respected entrepreneur

and philanthropist has been undermined by the pervasive nature of these

falsehoods, which continue to affect his relationships and credibility in both personal and professional contexts.

80.    As a direct result of Defendant's continued republication of her false statements, Plaintiff's public perception has been significantly altered, resulting in ongoing harm.

## CONTINUING HARM AND ANTICIPATED DAMAGES

81.    Upon information and belief, Plaintiff anticipates discovering further false and defamatory statements as the litigation unfolds, particularly as additional evidence is gathered.

82.    Defendant is likely to continue disseminating defamatory and misleading statements about Plaintiff, especially in relation to her involvement in the upcoming season of The Real Housewives of Atlanta according to promotional material that has already been released.

83.    Absent intervention by this Court, Plaintiff faces ongoing reputational damage and emotional distress due to Defendant's extensive social media reach and high-profile presence on widely viewed television programs.

84.    Plaintiff continues to be susceptible to defamatory attacks and public humiliation orchestrated through Defendant's extensive media platform, television apperances and persistent pattern of harmful falsehoods.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.  Enter judgment in favor of Plaintiff and against Defendant on all counts;

B.  Award Plaintiff compensatory damages in an amount to be determined at trial;

C.  Award Plaintiff punitive damages in an amount to be determined at trial;

D.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action;

E.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 31st day of January 2025.

*s/Alcide L. Honoré, Esq.*
Alcide L. Honoré, Esq.
GA Bar. No.: 012608
HONORE LAW, LLC
675 Ponce De Leon Ave. NE
Suite NE223
Atlanta, Georgia, 30308
(678) 888-4637
ahonore@honorelaw.com
**Counsel for Plaintiff**

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 31st day of January 2025.

_s/Alcide L. Honoré, Esq._
Alcide L. Honoré, Esq.
GA Bar. No.: 012608
HONORE LAW, LLC
675 Ponce De Leon Ave. NE
Suite NE223
Atlanta, Georgia, 30308
(678) 888-4637
ahonore@honorelaw.com
***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of January, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends e-mail notification of such filing to the Defendants attorneys of record.

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this VERIFIED COMPLAINT FOR DEFAMATION is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

Respectfully submitted this 31st day of January 2025.

<u>*s/Alcide L. Honoré, Esq.*</u>
Alcide L. Honoré, Esq.
GA Bar. No.: 012608
HONORE LAW, LLC
675 Ponce De Leon Ave. NE
Suite NE223
Atlanta, Georgia, 30308
(678) 888-4637
ahonore@honorelaw.com
**Counsel for Plaintiff**