**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SIMON GUOBADIA**<br>    **Plaintiff,** | **CIVIL ACTION FILE NO.**<br>**1:24-CV-05346-MHC** |
| | **MEMORANDUM OF LAW IN**<br>**OPPOSTITION TO DEFENDANT'S**<br>**MOTION TO DIMSISS PLAINTIFF'S**<br>**FIRST AMENDED COMPLAINT** |
| **v.** | |
| **PORSHA WILLIAMS,** | |
|     **Defendant.** | |

Plaintiff, Simon Guobadia ("Plaintiff"), by and through undersigned counsel, files this Response in Opposition to Defendant Porsha Williams' ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint ("the Complaint"), and in support thereof respectfully shows this Court as follows:

## INTRODUCTION

This lawsuit stands at the intersection of law, celebrity, and social media. It centers on a series of statements that first lit up digital platforms and have now arrived in this Court for judicial scrutiny. On those platforms, Defendant personally posted bold, eye-catching graphics and commentary to millions of followers,

claiming that Plaintiff—her spouse, from whom she is seeking a divorce—suffered from erectile dysfunction ("ED"). Crucially, Defendant does not deny posting these statements, and she specifically asserts that they were designed to "inform" the public about men's health issues, effectively casting them as factual rather than mere opinion or conjecture.

As stated in the Complaint, these statements are false, were widely understood to refer to Plaintiff, and have inflicted meaningful harm on his reputation and emotional well-being. Defendant's Motion to Dismiss insists the suit lacks merit, but under the Rule 12(b)(6) standard, a complaint survives so long as it sets forth factual allegations that, if proven, would entitle the plaintiff to relief. As detailed below, the Complaint more than meets that requirement, alleging both defamation (per se and per quod), intentional infliction of emotional distress, and false light.

## I. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) focuses on the legal sufficiency of the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the plaintiff can prove no set of facts that would support the claims alleged.

## II. PLAINTIFF STATES A CLAIM FOR DEFAMATION

Pursuant to O.C.G.A. § 51-5-1(a), a plaintiff must allege the following four elements to state a claim for defamation:

1. A false and defamatory statement concerning the plaintiff;

2. An unprivileged communication of that statement to a third party;

3. Fault on the part of the defendant amounting to at least negligence; and,

4. Special harm or a statement that is actionable irrespective of special harm (i.e., defamation per se).

See *Smith v. DiFrancesco*, 341 Ga. App. 786, 788 (2017).

Here, Plaintiff has met all these requirements. Plaintiff alleges that Defendant falsely stated he suffers from erectile dysfunction ("ED"). Defendant acknowledges that she intentionally posted these statements "to inform" people about men's health, effectively presenting them as factual rather than mere opinion or conjecture. Plaintiff does not have ED, has never had ED, and has pled the same in his Complaint. Whether a statement about one's medical condition is true or false is inherently verifiable. Thus, at this stage, the Complaint plausibly alleges a false statement.

Defendant's own portrayal of these statements as "health awareness" material eliminates any suggestion that she was simply offering a personal opinion or joke. Publishing such serious claims about someone's intimate medical condition to millions of social media followers was plainly an unprivileged communication. Under well-established law, the question of fault—whether Defendant acted negligently, recklessly, or otherwise—cannot be resolved on a motion to dismiss; Plaintiff has sufficiently alleged that Defendant knew or should have known her statements were false.

Moreover, a false statement need not expressly identify the plaintiff by name to be actionable. Under the Restatement (Second) of Torts § 564 (1977), "to be actionable, a defamatory statement must be understood as referring to the plaintiff by those who read or hear it." Defendant erroneously concludes that her Instagram posts cannot be defamatory merely because she did not mention Plaintiff's name. Georgia courts have rejected this argument, recognizing that context can be enough. See *Southland Publishing Co. v. Sewell*, 111 Ga. App. 803, 806 (1965). If "all the circumstances attending the publication are sufficient to designate the plaintiff," a statement may be defamatory even without explicit naming.

The Complaint alleges the following contextual clues, *inter alia*, linking Defendant's statements to Plaintiff: (a) The parties appeared together on multiple episodes of Bravo's "Real Housewives of Atlanta," where Defendant's celebrity

status drew substantial media and public attention. (b)Defendant publicly announced her divorce from Plaintiff, drawing further scrutiny to both parties' personal lives. (c) Soon after that announcement, Defendant posted social media content referencing ED, leading countless followers and media outlets to connect those statements to Plaintiff. (Am. Compl. ¶¶ 8, 23–30).

Thus, readers of Defendant's posts, as well as the press, readily concluded she was referring to Plaintiff, her then-current spouse in highly publicized divorce proceedings. This context—taken together with the widespread coverage— reinforces that the statements were reasonably "understood as referring to the plaintiff." Restatement (Second) of Torts § 564.

Finally, Plaintiff has sufficiently pled special harm: the Complaint specifically alleges reputational injury, mental anguish, and other damages flowing from these false ED accusations. Given Defendant's high-profile platform and the personal nature of the allegations, the potential harm to Plaintiff's relationships and standing in the community is evident. Nothing more is required at this stage, as questions about the ultimate truth or impact of Defendant's statements are for the factfinder, not a Rule 12(b)(6) motion.

## III. THE PLAINTIFF STATES A CLAIM FOR DEFAMATION PER SE

Under Georgia law, certain categories of defamatory statements are deemed so serious that damages are presumed. See Ga. Code Ann. § 51-5-4. Specifically, a statement constitutes defamation per se if it:

1.      Charges another person with a crime punishable by law;

2.      Charges another person "with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;" or

3.      Refers to the trade, office, or profession of another person, and is calculated to injure him.

See Ga. Code Ann. § 51-5-4(a). In interpreting these provisions, Georgia courts have explained that defamatory per se statements include those that accuse a person of "crime, dishonesty or immorality," *Eidson v. Berry*, 415 S.E.2d 16, 17 (Ga. Ct. App. 1992), as well as those suggesting an individual has engaged in sexual misconduct. *Baskin v. Rogers*, 493 S.E.2d 728, 730 (Ga. Ct. App. 1997).

While traditionally "defamation per se" often involved labeling someone with a "loathsome disease," courts have recognized that false allegations regarding an individual's sexual health can carry analogous stigmatic harm. See *Martin v. Outlaw*, 186 Ga. App. 292 (1988). Here, Defendant's statements suggesting that Plaintiff suffers from erectile dysfunction ("ED") fall within this zone of inherently injurious accusations. ED is widely perceived as a debasing condition—one that

can invoke ridicule, contempt, or isolation. By publicly and repeatedly highlighting Plaintiff's supposed ED using bold text, "health awareness" messaging, and an overall tone of factual reporting, Defendant increased the likelihood that the public would view Plaintiff as physically compromised or socially diminished.

Defendant's postings not only expose Plaintiff to mockery and diminished social standing but also jeopardize his trade or professional prospects. An individual's credibility and perceived vigor can be central to business success— especially for someone who, like Plaintiff, is a public figure and entrepreneur. Georgia courts have long held that harming a person's reputation in their trade or profession can constitute defamation per se, because it is "calculated to injure him" in his livelihood. *Mathis v. Cannon*, 276 Ga. 16, 27 (2002). Accordingly, by insinuating that Plaintiff is physically unfit or compromised, Defendant's statements strike at the heart of his professional and personal image.

In sum, because Defendant's statements charge Plaintiff with a condition that carries social stigma and professional injury, they fall within the well-established categories of defamation per se under Ga. Code Ann. § 51-5-4. As a result, Plaintiff need not prove special damages at this stage; the law presumes harm when a statement is so patently destructive to one's good name. Nonetheless, the Complaint further details the specific reputational harm and emotional anguish

arising from these posts—reinforcing the conclusion that this claim for defamation per se is properly pleaded and must survive dismissal.

## IV. THE PLAINTIFF STATES A CLAIM FOR DEFAMATION PER QUOD

In addition to alleging defamation per se, Plaintiff's Complaint also sets forth a viable claim of defamation per quod, which requires special damages or harm that can be specifically proven to arise from the defamatory statement. Under Georgia law, "[t]o be actionable for defamation per quod, a plaintiff must show (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm caused by the publication." *Smith v. DiFrancesco*, 341 Ga. App. 786, 788, 802 S.E.2d 69 (2017).

    1.    <u>False and Defamatory Statement</u>

Plaintiff alleges that Defendant falsely stated he suffers from an intimate medical condition—erectile dysfunction ("ED"). The Complaint explicitly avers that Plaintiff does not in fact suffer from ED, rendering Defendant's accusations demonstrably untrue. Whether these statements are indeed false is ultimately a fact question; at this stage, the Court must accept Plaintiff's well-pleaded allegations as true.

    2.    <u>Unprivileged Communication to a Third Party</u>

The Complaint identifies Defendant's social media postings to millions of her followers, as well as subsequent media coverage referencing Plaintiff in connection with alleged ED. No privilege protects these communications, which were disseminated publicly and voluntarily by Defendant. Thus, the statements were unquestionably communicated to third parties.

3.    Fault Amounting at Least to Negligence

Plaintiff's Complaint details how Defendant presented her statements as "informative" or "awareness-raising," implying they were factual and accurate. At minimum, Defendant acted negligently by failing to verify the truthfulness of her claims before publishing them, especially given that she knew or should have known Plaintiff did not have ED. Whether the standard is negligence, recklessness, or actual malice, Plaintiff's allegations amply satisfy the fault requirement for pleading purposes.

4.    Special Harm Caused by the Publication

Because the Complaint also pleads defamation per se, it may not strictly require showing special damages. However, even under a defamation per quod theory, the Complaint alleges concrete injuries resulting from Defendant's false statements: diminished business opportunities, reputational harm, and mental anguish severe enough to interfere with Plaintiff's personal and professional relationships. *Smith* recognizes that such specific harms, if proven, are sufficient to

meet the special harm requirement. By highlighting how a false assertion of ED can degrade trust in professional dealings and prompt public ridicule, Plaintiff has adequately pleaded facts illustrating special damages.

## V. WHETHER THE STATEMENST WERE OF AND CONCERNING THE PLAINTIFF IS A JURY QUESTION

Defendant suggests that the posts cannot be defamatory because they do not name Plaintiff explicitly. Yet under Georgia law, it is enough if readers, viewers, or listeners can reasonably deduce that the plaintiff is the target. *Southland Publishing Co. v. Sewell*, 111 Ga. App. 803, 806 (1965). The timing of Defendant's posts, her marital relationship to Plaintiff, and media speculation tying these ED references to him more than suffice to show that the statements were "of and concerning" Plaintiff. Whether the public did, in fact, interpret them as such is a factual question reserved for the jury.

## VI. PLAINTIFF PROPERLY ALLEGES INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To state a claim for Intentional Infliction of Emotional Distress ("IIED") under Georgia law, a plaintiff must show:

1. Conduct by the defendant that is intentional or reckless;

2. Extreme and outrageous conduct;

3. A causal connection between the wrongful conduct and the plaintiff's emotional distress; and

4. Emotional distress that is so severe no reasonable person could be expected to endure it. *Jones v. Warner*, 301 Ga. App. 39, 41 (2009).

A. <u>Defendant's Conduct Was Intentional or Reckless</u>

The Complaint alleges that Defendant deliberately orchestrated public statements implying Plaintiff suffers from erectile dysfunction ("ED"). Rather than offering mere opinion, Defendant explicitly framed her posts as "informative," signaling that she presented these statements as factual medical claims about Plaintiff's sexual health. Plaintiff maintains that these assertions are false and that Defendant, as his spouse in an ongoing divorce, knew or should have known the statements were untrue. At a minimum, such conduct can be viewed as reckless if Defendant failed to verify the accuracy of her medical claims before disseminating them to millions of social media followers.

B. <u>Defendant's Conduct Was Extreme and Outrageous</u>

Under Georgia law, extreme and outrageous conduct is that which goes "beyond all possible bounds of decency." Jones, 301 Ga. App. at 41. Defendant's postings did more than merely insult Plaintiff's character; she released highly sensitive and false medical information to a vast online audience, fully aware that the parties' divorce and public profiles would draw significant attention. By leveraging her celebrity platform, Defendant not only escalated a private matter into a public spectacle but also amplified the humiliation by crafting bold text, eye-

catching graphics, and repeated references to "men's health." Such actions can be deemed extreme and outrageous because they exploit the public's interest in salacious or personal details, ensuring Plaintiff's anguish and reputational harm would be widespread.

C. Defendant's Conduct Caused Plaintiff's Emotional Distress

Plaintiff alleges that Defendant's conduct directly resulted in mental anguish, humiliation, anxiety, and public ridicule. In *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222, 224 (1988), the Georgia Court of Appeals recognized that false statements causing public humiliation could suffice to meet the requirement of emotional distress. Here, Plaintiff claims he has been forced to endure persistent negative attention and speculation from the public and media outlets who picked up Defendant's storyline. This type of public exposure and humiliation aligns squarely with the kind of emotional distress recognized in Moses.

D. Plaintiff's Emotional Distress Is Severe

Georgia courts require that the alleged emotional distress be so severe that "no reasonable person could be expected to endure it." Jones, 301 Ga. App. at 41. Plaintiff contends that Defendant's statements have invaded his privacy, tarnished his personal and professional relationships, and subjected him to ongoing embarrassment among peers, business contacts, and potential clients. In an era of social media virality, the reach and permanence of such allegations compound their

impact, making the resulting emotional suffering profound. Whether Plaintiff can ultimately prove the severity of his distress is a question of fact that cannot be resolved at this stage. However, at the pleading level, Plaintiff's allegations—taken as true—are sufficient to survive a motion to dismiss.

## VII. PLAINTIFF STATES A CLAIM FOR FALSE LIGHT

Under Georgia law, false light is an invasion-of-privacy tort that protects against publicity placing the plaintiff in a misleading or highly offensive portrayal. Although it overlaps with defamation, the focus in false light is not solely on reputational harm but rather on the distortion of how the plaintiff is publicly perceived. Courts generally require:

1.  Publicity to a large number of people,

2.  A false or misleading depiction of the plaintiff,

3.  That would be highly offensive to a reasonable person, and

4.  Knowledge of or reckless disregard for the falsity. *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245, 251 (1974), *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 688 (4th Cir. 1989).

While false light and defamation share similarities, false light addresses the depiction of the plaintiff in a way that creates an objectionable impression— regardless of whether the specific statements qualify as defamatory. In other words, even if a jury were to conclude that Defendant's statements do not meet the strict

elements of defamation, the same comments could still place Plaintiff in a false and offensive light before the public.

Plaintiff alleges that Defendant's posts—publicly insinuating that Plaintiff suffers from erectile dysfunction—were widely disseminated across social media to Defendant's millions of followers. Defendant's own concession that she posted these statements to "inform" the public heightens their appearance of factual reliability. By presenting the information as a medical or health-related fact, Defendant portrayed Plaintiff in a misleading and embarrassing light, implying he had a stigmatizing condition that could diminish his personal relationships, professional opportunities, and overall public standing.

The Complaint makes clear that Defendant's Instagram posts and related social media content reached a massive audience. That is more than sufficient to constitute "publicity" for a false light claim.

Plaintiff maintains that he does not suffer from ED and that Defendant's statements were entirely untrue. Misrepresenting someone's intimate health can easily paint them in an inaccurate and disparaging light, beyond the scope of mere opinion or harmless commentary.

Courts recognize that publicly attributing a stigmatizing physical or sexual condition to an individual can be deeply offensive and humiliating. In an era of

instant social media amplification, such statements have an even greater potential to cause distress, as the commentary and speculation can multiply swiftly.

Plaintiff's Complaint alleges that Defendant either knew her statements were false or acted with reckless disregard for their truth. Because Defendant is Plaintiff's spouse in ongoing divorce proceedings, Plaintiff contends she was keenly aware that Plaintiff does not suffer from ED. Moreover, framing these statements as factual "health awareness" content suggests Defendant intended the public to believe them without question.

Even if, for argument's sake, these remarks did not meet all the technical requirements of defamation, a jury could still find them highly misleading and offensive. Cantrell confirms that false light protects against the indignity of being cast in a false role—even if the published material does not squarely fit the definition of defamation. Defendant's emphasis on Plaintiff's purported medical issues, coupled with bold text and "helpful tips" or statistics about ED, cultivated a narrative that Plaintiff suffers from a personal failing. This misleading portrayal could be found offensive by a reasonable person and is actionable as false light..

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss. The Complaint amply alleges defamation (both per se and per quod), intentional infliction of emotional distress, and false

light. Defendant's broad assertions that these were mere "men's health awareness" posts cannot negate the plausibility of Plaintiff's claims at this early stage, where factual disputes must await further development. Plaintiff should have the opportunity to prove that these publicly broadcasted statements—authoritatively styled as facts—were false and injurious.

Respectfully submitted this 21st day of February 2025.

*s/Alcide L. Honoré, Esq.*
Alcide L. Honoré, Esq.
GA Bar. No.: 012608
HONORE LAW, LLC
675 Ponce De Leon Ave. NE
Suite NE223
Atlanta, Georgia, 30308
(678) 888-4637
ahonore@honorelaw.com
**Counsel for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends e-mail notification of such filing to the Defendants attorneys of record.

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this VERIFIED COMPLAINT FOR DEFAMATION is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

Respectfully submitted this 21st day of February 2025.

*<u>s/Alcide L. Honoré, Esq.</u>*
Alcide L. Honoré, Esq.
GA Bar. No.: 012608
HONORE LAW, LLC
675 Ponce De Leon Ave. NE
Suite NE223
Atlanta, Georgia, 30308
(678) 888-4637
ahonore@honorelaw.com
***Counsel for Plaintiff***
