IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SIMON GUOBADIA,

   Plaintiff,

v.

PORSHA WILLIAMS,

   Defendant.

CIVIL ACTION FILE

NO. 1:24-CV-5346-MHC

## <u>ORDER</u>

  This case comes before the Court on Defendant Porsha Williams's Motion to Dismiss Plaintiff's First Amended Complaint ("Mot. to Dismiss") [Doc. 9].

## I. BACKGROUND[1]

  Plaintiff is an entrepreneur and philanthropist who currently resides in the United Arab Emirates, and is the founder and CEO of SIMCOL Group, an investment company involved in various industries, including energy and

---

[1] Because this case is before the Court, in part, on Defendant's Motion to Dismiss, the facts are presented as alleged in Plaintiff Simon Guobadia's First Amended Complaint ("Am. Compl.") [Doc. 7]. See <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).  The Complaint [Doc. 1] was amended on January 31, 2025, and the Amended Complaint is the operative complaint in this case.

hospitality.  Am. Compl. ¶¶ 5-6.  Defendant is a public figure and television personality who resides in Fulton County, Georgia.  Id. ¶ 7.  Defendant is known for her role on the Real Housewives of Atlanta ("RHOA")[2] and large social media presence, which includes 7.7 million followers on Instagram.  Id. ¶¶ 7-8.

Plaintiff and Defendant were married on November 26, 2022, in a widely publicized ceremony.  Id. ¶ 11.  In February 2024, "news broke" that Plaintiff and Defendant "were splitting," an announcement that came after news that Defendant would return to RHOA.  Id. ¶ 12.  On or about July 9, 2024, Defendant published a series of statements about erectile dysfunction ("ED") on her Instagram account.  Id. ¶ 14.  The first statement was a black background with "ED" written in bold white letters.  Id.  Defendant's posts continued and provided definitions of ED and details about its symptoms and treatments, including statements such as, "ED can cause stress, affect self-confidence, and contribute to relationship problems," and "it is common for men with ED to feel anger, frustration, sadness, or lack confidence."  Id. ¶¶ 15-16.  These statements included the hashtag #MensHealthAwareness.  Id. ¶ 18.

---

[2] According to the First Amended Complaint, RHOA is the most popular program in the Real Housewives Franchise on Bravo, a cable television network that is available to approximately 70,000,000 households.  Id. ¶ 12.

Defendant's statements were disseminated to a large audience via her Instagram account. Id. ¶ 21. They were also disseminated via multiple media outlets:

- All About the Tea: On July 10, 2024, this celebrity gossip website posted an article titled "Porsha Williams Claims Simon Guobadia Suffers from Erectile Dysfunction!" and referencing Defendant's social media posts. Id. ¶ 23. Plaintiff alleges that the article "highlighted that members of the public clearly recognized the Defendant's comments as referring to the Plaintiff," including citing to numerous social media user posts reflecting this interpretation. Id. ¶ 24.

- RHO Café: This online source published a story titled "RHOA's Porsha Williams Throws Shade at Ex Simon Guobadia With 'ED' Posts." Id. ¶ 25. Plaintiff alleges that this article also "highlighted that Defendant's posts were interpreted as an insinuation that Plaintiff suffers from ED." Id. This article also included Defendant's social media posts as presented on the Instagram page "The Neighborhood Talk." Id. ¶¶ 25-26.

- The Neighborhood Talk: This Instagram page reports on celebrity news and gossip and has over 1.9 million followers. Id. ¶ 27. The page included photos of Plaintiff and Defendant superimposed over Defendant's posts, which Plaintiff alleges left "no doubt that the public at large considered the Defendants' comments about ED to be specifically referencing [Plaintiff]." Id. ¶ 27.

- The Jasmine Brand: On July 10, 2024, this entertainment website and social media platform with over 831,000 Instagram followers, covered Defendant's social media posts in an article titled "Porsha Williams' Estranged Husband Simon Guobadia Threatens Legal Action After Reality Star Seemingly Claims He Has Erectile Dysfunction." Id. ¶¶ 29-30.

Plaintiff alleges that he does not have ED and has never suffered from or been diagnosed with this condition.  Id. ¶ 33.  Plaintiff alleges that the inclusion of "#MensHealthAwareness appeared to give the posts the tone of health awareness, though the timing and context made it clear they were directed at Plaintiff."  Id. ¶ 18.  Plaintiff further alleges the following:

> The nature, timing, and context of these posts, amidst the couple's public separation, led reasonable viewers to infer that Defendant's statements were referring to Plaintiff – because they were.
>
> Importantly, Defendant's statements were not made as expressions of opinion but instead presented as factual assertions regarding Plaintiff's health, stating or strongly implying that Plaintiff suffers from ED.

Id. ¶¶ 19-20.  Additionally, Plaintiff alleges that, as his former spouse, Defendant's statements were perceived by the public as having legitimacy and insider knowledge such that the public would be more likely to believe they were true.  Id. ¶ 32.

As a result of Defendant's statements, Plaintiff alleges that his "credibility and image within his community and professional networks" has been affected.  Id. ¶ 37.  Plaintiff also "endured significant emotional distress and personal anguish" and has suffered reputational harm, including the loss of business relationships.  Id. ¶¶ 38, 71.  Plaintiff's personal and professional relationships have pulled away from associating with Plaintiff.  Id. ¶ 52.  Plaintiff alleges that, because

Defendant's statements were disseminated widely across the internet, her

statements associating Plaintiff with the symptoms of ED remain publicly available

indefinitely, making it "nearly impossible" for Plaintiff or his business to maintain

a positive reputation online. Id. ¶¶ 46-49. Further, whenever Plaintiff posts on his

own social media page or is referenced in a publication, commenters frequently

reference Defendant's statements; Plaintiff alleges that Defendant "clearly

intended" this online ridicule of Plaintiff. Id. ¶ 67.

Based on the foregoing, Plaintiff brings the following claims against

Defendant: (1) defamation; (2) defamation per se; (3) intentional infliction of

emotional distress; (4) invasion of privacy—false light. Id. ¶¶ 39-80. Plaintiff

seeks compensatory and punitive damages, and attorney's costs and fees. Id.,

Prayer for Relief.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this

standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  The plausibility standard is not
> akin to a "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a

claim will survive a motion to dismiss only if the factual allegations in the pleading

are "enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the

plaintiff's complaint as true, as well as all reasonable inferences drawn from those

facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v.

Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  Not only

must the court accept the well-pleaded allegations as true, but these allegations

must also be construed in the light most favorable to the pleader.  Powell v.

Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not

accept legal conclusions, nor must it accept as true legal conclusions couched as

factual allegations.  Iqbal, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss

requires the court to assume the veracity of well-pleaded factual allegations and

"determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   DISCUSSION

### A.    Defamation and Defamation Per Se (Counts I and II)

Georgia law defines libel as the "false and malicious defamation of another,

expressed in print, writing, pictures, or signs, tending to injure the reputation of the

person and exposing him to public hatred, contempt, or ridicule."  O.C.G.A.

§ 51-5-1; see also Boley v. A-1 Horton's Moving Serv., Inc., 373 Ga. App. 574,

578 (2024), recons. denied (Nov. 7, 2024), cert. denied (Feb. 18, 2025) ("Because

libel or slander are types of defamatory statements, libel and slander are considered

under the same umbrella as defamation.").  A cause of action for defamation

includes the following elements: "(1) a false and defamatory statement concerning

the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the

defendant amounting at least to negligence; and (4) special harm or the

actionability of the statement irrespective of special harm."  Smith v. Stewart, 291

Ga. App. 86, 91-92 (2008) (quoting Mathis v. Cannon, 276 Ga. 16, 20-21 (2002)).

A complaint for defamation can allege defamation per se or defamation per

quod.

> "Libel per se consists of a charge that one is guilty of a crime,
> dishonesty or immorality."  Barber v. Perdue, 194 Ga. App. 287, 288

(1989). Statements that tend to injure one in his trade or business also are libelous per se. See Southern Co. v. Hamburg, 220 Ga. App. 834, 840 (1996). When determining whether words are defamatory as a matter of law, courts may not hunt for strained constructions, see Willis v. United Family Life Ins., 226 Ga. App. 661, 662 (1997), and must rely upon the words themselves in considering whether a statement was defamatory per se. See Mathews v. Atlanta Newspapers, 116 Ga. App. 337, 339 (1967); Barber, supra. "Defamatory words which are actionable per se are those which are recognized as injurious on their face—without the aid of extrinsic proof. However, if the defamatory character of the words [does] not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo. [Cit.]" Macon [Telegraph Pub. Co. v. Elliott, 165 Ga. App. 719], 723, [(1983)].

Zarach v. Atlanta Claims Ass'n, 231 Ga. App. 685, 688 (1998) (parallel citations omitted). "Unlike in an action for libel per quod, in an action for libel per se, 'special damages need not be proved because damage is inferred.'" Stewart, 291 Ga. App. At 96 (quoting Bellemeade, LLC v. Stoker, 280 Ga. 635, 637 (2006)). To state a claim for defamation per quod, the plaintiff must plead special damage in the form of "actual pecuniary loss." F.A.A. v. Cooper, 566 U.S. 284, 295-96 (2012).

1.    **Whether Plaintiff's Defamation Claims are Actionable Even Though the Alleged Defamatory Statements Do Not Mention Plaintiff's Name**

First, Defendant argues that both of Plaintiff's defamation claims should be dismissed because the alleged defamatory statements "are not of and concerning Plaintiff in Any Way, Shape or Form." Mem. of Law in Supp. of Def.'s Mot. to

Dismiss ("Def.'s Br.") [Doc. 9-1] at 8.  In response, Plaintiff argues that a false statement need not directly mention the plaintiff to be actionable, and that the context of the statements and their widespread media coverage demonstrate that the statements were reasonably "understood as referring to [Plaintiff]."  Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") [Doc. 10] at 4-5, 10 (quoting Restatement (Second) of Torts § 564).

> Regarding the first element of a defamation claim, that is, whether the publication could be found to be a false and defamatory statement concerning the plaintiff, the allegedly defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.  Stated differently, the plaintiff has the burden of showing, inter alia, that the publication was about the plaintiff, that is, whether it was of and concerning her as a matter of identity.

Stewart, 291 Ga. App. at 92 (internal quotations and citations omitted).

> Where the words of the alleged libelous matter are so vague and uncertain that they could not have been intended to refer to any particular person, or the published words are incapable of any other construction other than that they are not defamatory of the plaintiff, the petition is subject to dismissal.  A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. . . .  When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not.  If upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read.

Fiske v. Stockton, 171 Ga. App. 601, 602 (1984), overruled on other grounds by

Oskouei v. Matthews, No. S24G0335, 2025 WL 515811 (Ga. Feb. 18, 2025)

(alterations accepted and internal quotations and citations omitted).

Defendant's argument that her statements cannot as a matter of law be

defamatory because they did not specifically mention Plaintiff's name is without

merit.  See Southland Pub. Co. v. Sewell, 111 Ga. App. 803, 807 (1965) (quotation

omitted) ("[T]he rule is that a publication must be construed in the light of all the

attending circumstances, the cause and occasion of the publication, and all other

extraneous matters which will tend to explain the allusion or point out the person

in question.").  Plaintiff alleges that Defendant's statements could be interpreted as

concerning Plaintiff because they were made after Plaintiff and Defendant

announced their separation, and because Defendant's status as his ex-wife gave the

statements an air of legitimacy and insider knowledge.  Am. Compl. ¶¶ 19-20, 32.

Further, Plaintiff alleges that multiple media outlets interpreted Defendant's

statements as referring to Plaintiff.  Id. ¶¶ 23-30, 67.  "[T]he language under

consideration here was at the very least reasonably susceptible of a construction by

the average reader which would render it libelous . . . it cannot be said as a matter

of law that the alleged libel was not of and concerning [P]laintiff."  Sewell, 111

Ga. App. at 808.  Accordingly, the Court finds that Plaintiff sufficiently alleges

that Defendant's defamatory statements concerned Plaintiff, and Defendant's

Motion to Dismiss on the ground that the statements did not mention Plaintiff's

name is **DENIED**.

### 2.    Whether Defendant's Statements Constitute Defamation Per Se

Second, Defendant argues that Plaintiff's defamation per se count should be

dismissed because Defendant's statements did not mention Plaintiff and did not

"charge Plaintiff with any crime, dishonesty, or immorality" and therefore are not

injurious on their face.  Def.'s Br. at 9-10.  In response, Plaintiff argues that "false

allegations regarding an individual's sexual health" and "harming a person's

reputation in their trade" fall into the type of allegations that courts have

recognized as defamation per se.  Pl.'s Opp'n at 6-7.

O.C.G.A. § 51-5-4(a) defines the following types of statements as slander:

(1) Imputing to another a crime punishable by law;

(2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;

(3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or

(4) Uttering any disparaging words productive of special damage which flows naturally therefrom.

O.C.G.A. § 51-5-4(a); see also Lucas v. Cranshaw, 289 Ga. App. 510, 515 (2008)

(noting that O.C.G.A. § 51-5-4(a)(1)-(3) provides the categories of statements

which are slander per se). "Although O.C.G.A. § 51-5-4 refers to slander and not

libel, the definition of slander in Georgia has been incorporated into the definition

of libel. Therefore, that which is slander per se can also become libel per se under

the aegis of O.C.G.A. § 51-5-4." Lucas, 289 Ga. App. at 515 (internal quotations

and citations omitted and alterations accepted).

> To be slander per se, the words are those which are recognized as injurious on their face—without the aid of extrinsic proof. Should extrinsic facts be necessary to establish the defamatory character of the words, the words may constitute slander, but they do not constitute slander per se. Thus, the court may not hunt for a strained construction in order to hold the words used as being defamatory as a matter of law, and the negative inference a hearer might take from the words does not subject the speaker to liability for slander per se.

Cottrell v. Smith, 299 Ga. 517, 523 (2016) (quoting Bellemeade, 280 Ga. at

637-38).

The Court finds that Defendant's statements were not injurious on their face

and, therefore, cannot form the basis for Plaintiff's defamation per se claim.

Defendant's statements, taken literally, only included objective health information

about ED. Am. Compl. ¶¶ 15-18. Plaintiff concedes as much when he alleges that

the statements "appeared to give the tone of health awareness, though the timing

and context made it clear that they were directed at Plaintiff." Id. ¶ 18. Taking the

statements on their face without any additional knowledge of Plaintiff, Defendant, or the dissolution of their marriage, the statements could not be interpreted as anything other than general information about ED. Therefore, the statements require inuendo to be interpreted as defamatory. See Dougherty v. Harvey, 317 F. Supp. 3d 1287, 1292 (N.D. Ga. 2018) ("[T]he statement . . . required either additional facts or inferences to make plain that something injurious was said. That is the classic form of innuendo in a defamation case: additional explanation or interpretation is needed to turn what appears to be an anodyne statement into a defamatory one.").

Further, Defendant's statements do not fall into the categories of defamation per se enumerated in O.C.G.A. § 51-5-4(a)(1)-(3). The text of those portions of the statute that are relevant to the instant case are: "(2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; [or] (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51-5-4(a)(2)-(3). The plain language of § 51-5-4(a)(2) does not include ED, which is neither a contagious disorder nor a debasing act.[3] Defendant's statements also do

---

[3] The Court could not locate Martin v. Outlaw, 186 Ga. App. 292 (1988), the sole case Plaintiff cited to support his argument that false allegations regarding sexual health fit into this category. See Pl.'s Opp'n at 6. The citation that appears in

not fall under the plain language of § 51-5-4(a)(3) because they do not reference Plaintiff's profession.[4]  Therefore, Plaintiff does not sufficiently allege that Defendant's statements constituted defamation per se, and  Defendant's Motion to Dismiss is **GRANTED** as to Count II.

### 3.    Whether Plaintiff Alleges the Special Damages Required for Defamation Per Quod

Third, Defendant argues that Plaintiff's claim for defamation per quod should be dismissed because he does not allege special damages flowing from Defendant's statements.  Def.'s Br. at 12.  Specifically, Defendant argues that Plaintiff only alleges "ongoing psychological and reputational harm, including business relationships being severed due to the public scandal."  Id.  In response, Plaintiff argues that "the Complaint alleges concrete injuries resulting from Defendant's false statements: diminished business opportunities, reputational

---

Plaintiff's brief is to a page in a different case which involves a juvenile delinquent, In the Interest of G.C.S., 186 Ga. App. 291 (1988), and the Court could not find a Georgia case with the two party names referenced by Plaintiff.  It is, of course, disturbing that Plaintiff may have cited a case that does not exist.

[4] The sole case Plaintiff cites to support his argument that Defendant's statements reference his profession, Mathis, Pl.'s Opp'n at 7, is inapposite because, unlike this case, it involved statements that explicitly referenced the defendant's profession. See Mathis, 276 Ga. at 20.

harm, and mental anguish severe enough to interfere with Plaintiff's personal and

professional relationships." Pl.'s Opp'n at 9.

> In tort actions in Georgia, "[d]amages may be either general or special,
> direct or consequential." O.C.G.A. § 51-12-1. "General damages are
> those which the law presumes to flow from any tortious act" and which
> do not require proof; while "[s]pecial damages are those which actually
> flow from a tortious act" and which must be proved to be recovered.
> O.C.G.A. § 51-12-2.

Zedan v. Bailey, 522 F. Supp. 3d 1363, 1373 (M.D. Ga. 2021). "The loss of

employment, income or profits is categorized as special damages and is sufficient

injury upon which to predicate an action for libel where the defamatory words are

not libelous per se." Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 33 (5th Cir.

1973).[5] "Injury to one's business reputation is traditionally considered special

damage." Zedan, 522 F. Supp. 3d at 1372 (citing Floyd v. Atlanta Newspapers,

Inc., 102 Ga. App. 840, 843 (1960)).

Here, Plaintiff adequately pleads special damages because he alleges that

Defendant's statements caused business and reputational harm, damaged his

credibility, resulted in permanent association of himself and his businesses with

ED, and caused online ridicule. Am. Compl. ¶¶ 37-38, 46-49, 67, 71. These are

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth
Circuit issued before October 1, 1981.

not vague allegations but identify specifically how Plaintiff experienced the loss of business due to Defendant's statements.  Compare Hood, 486 F.2d at 33 (quotation omitted) ("The requirement of special damages is also satisfied where the plaintiff can, under the circumstances, only know that the flow of his business as a whole is diminished, and it would be impossible to point to any specific customers, or orders which have been lost.") with Beckman v. Regina Caeli, Inc., No. 1:23-CV-06000-SEG, 2024 WL 5162409, at *18 (N.D. Ga. Sept. 23, 2024) (holding that the plaintiff did not allege special damages where they only alleged that they sought nominal damages, general damages, economic damages, noneconomic damages, reputational damages, and exemplary damages).  Because Plaintiff sufficiently alleges special damages in support of his defamation per quod claim, Defendant's Motion to Dismiss is **DENIED** as to Count I.

## B. Intentional Infliction of Emotional Distress (Count III)

Defendant argues that Plaintiff's intentional infliction of emotional distress claim should be dismissed because she "merely posted general information about [ED]" and did not reference Plaintiff, and therefore her conduct is not outrageous enough to support Plaintiff's claim.  Def.'s Br. at 13-14.  In response, Plaintiff argues that Defendant's action went "beyond all possible bounds of decency" and

"exploit[ed] the public's interest in salacious or personal details, ensuring

Plaintiff's anguish and reputational harm would be widespread." Pl.'s Opp'n at 11.

A claim for intentional infliction of emotional distress requires the following

four elements: "(1) The conduct must be intentional or reckless; (2) The conduct

must be extreme and outrageous; (3) There must be a causal connection between

the wrongful conduct and the emotional distress; and (4) The emotional distress

must be severe." Cottrell, 299 Ga. at 521.

> It has not been enough that the defendant has acted with an intent which
> is tortious or even criminal, or that he has intended to inflict emotional
> distress, or even that his conduct has been characterized by malice, or
> a degree of aggravation which would entitle the plaintiff to punitive
> damages for another tort. Liability has been found only where the
> conduct has been extreme and outrageous. Extreme and outrageous
> conduct is that which is so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized community.
> Whether actions rise to the level of extreme and outrageous conduct
> necessary to support a claim of intentional infliction of emotional
> distress is generally a question of law.

Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 855-56 (2009) (internal

citations and quotations omitted). "It is well settled that the tortious conduct must

have been directed at the plaintiff in order to be actionable under a theory of

intentional infliction of emotional distress." Reece v. Chestatee State Bank, 260

Ga. App. 136, 142 (2003).

Defendant's statements do not rise to the level of extreme and outrageous conduct required to support an intentional infliction of emotional distress claim. Plaintiff does not allege that Defendant's statements surpassed mere insults or negative accusations, albeit ones that "would reach millions of people," Am. Compl. ¶¶ 65-66, and more is required to sufficiently allege extreme and outrageous conduct. See Ashman v. Marshall's of MA, Inc., 244 Ga. App. 228, 229-30 (2000) ("Actionable conduct does not include insults, threats, indignities, annoyances, petty oppressions, or other vicissitudes of daily living. . . . Although [Defendant's] statements were harsh, inappropriate, rude, vulgar, and unkind, we are constrained to find that his conduct does not meet the threshold of outrageousness and egregiousness necessary to sustain a claim for intentional infliction of emotional distress. Mere tasteless, rude or insulting social conduct will not give rise to such a claim."). Further, Plaintiff's claim is based on alleged defamatory statements that Defendant made to other individuals, which is a "classic example[] of conduct that, though harmful to the plaintiff, was directed toward the hearer of the statements, not to the plaintiff, and thus is not actionable as intentional infliction of emotional distress." Lively v. McDaniel, 240 Ga. App. 132, 134 (1999). Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Count III.

## C.    Invasion of Privacy—False Light (Count IV)

Defendant argues that Plaintiff's invasion of privacy—false light claim should be dismissed because "a false light claim must allege a nondefamatory statement" and because Defendant's statements "do not depict Plaintiff as anything or anyone" that he is not.  Def.'s Br. at 15 (quoting Krass v. Obstacle Racing Media, LLC, 667 F. Supp. 3d 1177, 1214 (N.D. Ga. 2023)).  In response, Plaintiff argues that a false light claim is viable regardless of whether the statements were defamatory, and that Plaintiff's allegations satisfy the elements of a false light claim.  Pl.'s Opp'n at 13-15.

Plaintiff's false light claim is not precluded by his defamation claim at the motion to dismiss stage.  Generally, to survive as a separate cause of action from defamation, "a false light claim must allege a nondefamatory statement.  If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy."  Bollea v. World Championship Wrestling, Inc., 271 Ga. App. 555, 557 n.1 (2005).  However, at the motion to dismiss stage, a plaintiff may plead inconsistent claims and is not precluded from pleading both a claim for defamation and for false light.  Andrews v. D'Souza, 696 F. Supp. 3d 1332, 1357 (N.D. Ga. 2023); see also FED. R. CIV. P. 8(d)(2), (3) (permitting a pleader to set forth alternative or hypothetical claims, regardless of consistency).

Plaintiff's false light claim also is not precluded because Defendant's statements did not expressly reference him. As discussed above, Plaintiff sufficiently pleads that Defendant's statements referred to him, and for a false light claim, "whether [Plaintiff] was depicted is a factual dispute the Court cannot resolve at this pleading stage." See id. Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Count IV.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Porsha Williams' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 9] is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** with respect to Plaintiff's claims for defamation per se (Count II) and intentional infliction of emotional distress (Count III), which are **DISMISSED**. The Motion is otherwise **DENIED**.

**IT IS SO ORDERED** this 31st day of March, 2025.

MARK H. COHEN
United States District Judge